UNITED STATES v. RANIER BREWING CO. et al.

(District Court, N. D. California, First Division. July 28, 1919.)

No. 7824.

1. INTOXICATING LIQUORS ⊜—17—CONSTITUTIONAL LAW—WAR TIME PROHIBITION ACT.

The War Time Prohibition Act of November 21, 1918, is constitutional.

2. INTOXICATING LIQUORS ⊜—134—WAR TIME PROHIBITION ACT—CONSTRUCTION—LIQUORS PROHIBITED.

The War Time Prohibition Act of November 21, 1918, preventing the sale of beer, wine, and other intoxicating liquors, etc., refers only to beer and wine which is in fact intoxicating.

Information by the United States against the Ranier Brewing Company, a corporation, Louis Henrich, and R. Samet. Demurrer to information sustained.

Annette Abbott Adams, U. S. Atty., and Frank M. Silva, Asst. U. S. Atty., both of San Francisco, Cal.

Theodore A. Bell, of San Francisco, Cal., for defendants.

SAWTELLE, District Judge. The information charges that the defendants, in violation of the Act of Congress of November 21, 1918 (40 Stat. 1045, c. 212), sold for beverage purposes, and not for export, beer which contained as much as one-half of 1 per cent. of alcohol by weight and volume. It does not allege that said beer was intoxicating, and it is the contention of the prosecution that it is not necessary to so allege. The defendants contend that their demurrer to the information should be sustained, because said act of Congress is unconstitutional and void, and because said act does not prohibit the sale of nonintoxicating beer.

[1] In the case of Ranier Brewing Co. v. Adams, United States Attorney, et al.,[1] I held the act to be constitutional, and refused to enjoin said United States attorney from instituting prosecutions thereunder, and after a careful consideration and examination of the authorities I am more than ever convinced that the act is constitutional. The act was passed for the purpose of conserving the man power of the nation and to increase efficiency in the production of arms, munitions, ships, food, and clothing for the army and navy. In order to accomplish this purpose, namely, of conserving man power and increasing efficiency, as aforesaid—in other words,

---

[1] The opinion in this case was announced from the bench, was not reduced to writing, and hence was not reported.

to approximate 100 per cent. efficiency——Congress came to the conclusion that it was necessary that a law should be enacted prohibiting for a limited period the manufacture and sale of intoxicating liquors for beverage purposes. Thereupon Congress enacted:

"That after June 30, 1919, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, * * * it shall be unlawful to sell for beverage purposes any distilled spirits."

The act further provides that:

"During said time no distilled spirits held in bond shall be removed therefrom for beverage purposes except for export."

[2] It is thus clearly shown that Congress had very definitely determined that after June 30, 1919, and until the termination of demobilization, distilled spirits should not be sold for beverage purposes. To further aid in carrying out the declared purpose of the act, namely, "to conserve the man power of the nation and to increase efficiency," as aforesaid, it was provided in said act that:

After May 1, 1919, and "until the termination of demobilization, * * * no grains, cereals, fruit, or other food product shall be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes."

It was further provided in the act—and it is this provision that defendants herein are charged with having violated—that:

"After June 30, 1919, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no beer, wine, or other intoxicating malt or vinous liquor shall be sold for beverage purposes except for export."

Keeping in view the purpose of the act, Congress added this provision:

"After the approval of this act, no distilled, malt, vinous, or other intoxicating liquors shall be imported into the United States during the continuance of the present war and period of demobilization."

The word "beer" is omitted from this provision, and the word "malt" is substituted therefor. I think Congress was not interested in providing against the importation of malt liquors containing, we shall say, one-fourth of 1 per cent. of alcohol, but against the importation of intoxicating liquors. Manifestly, the words "other intoxicating liquors" relate to and qualify the preceding word "malt," so that only intoxicating malt liquors were within the statute.

After a careful analysis of the statute under which this prosecution has been brought, I have concluded that the words "or other intoxicating malt or vinous liquors" qualify the preceding words "beer" and "wine," and that it is not unlawful to sell beer which is not intoxicating. Therefore to bring beer within the prohibition of the act the information should allege that it was intoxicating. It does not so allege, and therefore I sustain the demurrer.

It must not be understood, from anything I have said, that I have held that it is lawful to sell beer which contains 2¾ per cent. alcohol

by weight or volume, or that it is lawful to sell beer which contains one-half of 1 per cent. alcohol. I have simply held that it is not unlawful to sell beer which is not intoxicating. The Commissioner of Internal Revenue has held that "a beverage containing one-half of 1 per cent. or more of alcohol by volume will be regarded as intoxicating." The Department of Justice is in accord with that holding, and is making conscientious efforts to have the court adopt that view. The case at bar, no doubt, will be appealed to the Supreme Court. Should the Supreme Court adopt the government's contention, and hold that all who have manufactured beer containing as much as one-half of 1 per cent. of alcohol are guilty of violating the act of November 21, 1918, they may find prison sentences awaiting them, and it might be well for those who are so engaged to pause and consider whether the money to be made is sufficient to justify the risk. A court might not, under all the circumstances, look upon their pleas for leniency with any great degree of compassion.